UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CARVIS LAMAR JOHNSON                                          PLAINTIFF

v.                                    CIVIL ACTION NO. 3:20-CV-9-KHJ-FKB

OFFICER JORDAN MCQUEARY, et al.                              DEFENDANTS

ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is the Report and Recommendation ("Report") of United

States Magistrate Judge F. Keith Ball. [82]. For the reasons stated, the Court

adopts this Report's findings and recommendation.

I.      Facts and Procedural History

This case involves seven consolidated cases against various Rankin County

Jail officials. Plaintiff Carvis Lamar Johnson alleges these officials violated his

Fourteenth Amendment Due Process rights under § 1983 based on his ongoing

confinement conditions and episodic incidents. Before consolidation, the Court held

a *Spears*[1] hearing in Civil Action Nos. 3:20-CV-9-KHJ-FKB, 3:20-CV-204-KHJ-FKB,

and 3:20-CV-328-KHJ-FKB, where Johnson testified about his attempts to file a

grievance. Johnson stated, "I asked for a grievance form, but they won't give me

none. They won't give a lot of people in that jail grievance forms[.]" [81] at 14. He

also testified he tried to write his own grievance form, "but the Lieutenant King and

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

the . . . Lieutenant Spears would never accept it," and that he wrote a copy of a

grievance and sent it to Sheriff Brian Bailey but did not receive a response. *Id.* at

14, 30-31 He also stated that an officer told him to "holler at the lieutenant in the

jail administration" about receiving a grievance form and that he later spoke to

Sheriff Brian Bailey, Lieutenant Barnett, Lieutenant Spears, and Lieutenant King

about getting a grievance form. *Id.* at 30.

In his Report, the Magistrate recommends the Court deny the pending

Motions for Summary Judgment because a genuine issue of material fact exists as

to whether Defendants made the grievance process "unavailable" by failing to

communicate the appropriate administrative process. Written objections to this

Report were due by August 18, 2021, and Defendants timely filed Objections,

arguing the Magistrate applied an "improper standard for availability of a

grievance procedure." [87] at 4.

II.     Standard

The Court reviews de novo the portions of the Magistrate's Report to which

Defendants object, 28 U.S.C. § 636(b)(1), while the remaining portions are subject to

a "clearly erroneous, abuse of discretion and contrary to law" standard of review.

*United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). The Court is not

"required to reiterate the findings and conclusions of the magistrate judge."

*Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (citing *Nettles v. Wainwright*,

677 F.2d 404, 406-07 (5th Cir. Unit B 1982)).

III.    Analysis

Defendants contend the Magistrate incorrectly found a genuine issue exists as to whether the grievance process at Rankin County Jail was "unavailable" for Johnson. Although Defendants argue a clear standard of error or contrary to law standard of review applies, this Court reviews the Report de novo because Defendants timely objected. 28 U.S.C. § 636(b)(1).

The Prison Reform Litigation Act (PRLA) requires prisoners to administratively exhaust their § 1983 claims through the prison grievance system before filing a complaint. 42 U.S.C. § 1997e(a). Failure to comply with this requirement mandates dismissal. See, e.g., Wilson v. Epps, 776 F.3d 296, 302 (5th Cir. 2015). But the PRLA only requires prisoners to exhaust "such administrative remedies as are available." § 1997e(a). The Supreme Court has recognized that administrative remedies are unavailable in three circumstances: (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the grievance process is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 578 U.S. 1174, 1859-60 (2016). When administrative remedies are unavailable for any of these reasons, § 1997e(a) does not bar the prisoner's case from moving forward. Id.

When determining the administrative remedies that a prisoner must exhaust, the Court looks to the prison's procedural rules for filing a grievance. Epps,

776 F.3d at 299 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rankin County

Jail's grievance process is found in the *Rankin County Adult Detention Center*

*Policies and Procedures*, Policy Number 12.3, which provides that an inmate "must

request an Inmate Grievance Form by writing a letter requesting such and

submitting it to the Jail Administrator via any Detention Officer." [58-3] at 3. Once

the inmate has made this written request, he will receive an Inmate Grievance

Form that he must complete and place in a secure mailbox. *Id.* at 2 (¶ 5). The

inmate will then receive a written copy of his completed form. *Id.* at 3.

Paul Holley, the in-house legal counsel for Rankin County, attested that

"[i]nmates are initially informed about the Rankin County Jail inmate grievance

procedure during an inmate orientation, which is conducted when an inmate is

booked into the Rankin County Jail." *Id.* at 1 (¶ 3). The form Defendants submit to

show Rankin County Jail notified Johnson of the grievance procedures, however,

does not reference the grievance procedures at all and does not state Johnson

received a copy of these procedures. [58-3] at 6. Holley also stated that "each

housing unit in the Rankin County Jail had television sets that played different

slides continuously throughout the day" that "provide inmates with information and

reminders on . . . the inmate grievance procedure." *Id.* at 1 (¶ 4). But the Inmate

Grievance slide reads, "Inmate grievances will be given by the tower Officer on

duty" and does not inform prisoners they must request a form in writing. [58-3] at 7.

The Court agrees that Rankin County Jail's grievance procedures are not "so

opaque that it becomes, practically speaking, incapable of use." *Ross*, 578 U.S. at

1859. Grievance procedures that a prisoner reasonably interprets multiple ways are not "unavailable" under this rule. *Id.* Rather, these procedures are unavailable when the administrative process is so confusing that "no ordinary prisoner can make sense of what it demands." *Id.* Defendants submit evidence that several other inmates have successfully filed grievances, suggesting "ordinary prisoners" can understand the grievance procedures. *See* [86-1]; [86-2]; [86-3]. But this evidence does not resolve the issue before this Court.

Grievance procedures may also be unavailable when jail employees are unwilling to provide relief to the aggrieved inmate and when prison officials misrepresent the proper grievance procedures. In these cases, the prison may officially adopt a clear grievance policy, but the prison officials' actions and implementation of this policy renders it practically unavailable. *See Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) ("Grievance procedures are unavailable if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process."); *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("[P]rison officials' statements concerning administrative remedies can render such remedies unavailable.").

The Fifth Circuit applied this rule in *Davis v. Fernandez,* 798 F.3d 290 (5th Cir. 2015). In *Davis*, the prison had a two-step grievance procedure that an inmate needed to follow to exhaust his remedies. *Id.* at 291. After completing the first step in the process, the inmate asked jail staff whether there was another step he needed

to complete. *Id.* They told him there was not another step, so the inmate failed to complete the second step of the grievance process. *Id.* When responding to the inmate's argument that he properly exhausted his available remedies, the prison pointed to its inmate handbook containing these policies and jail television that explained the grievance procedures. *Id.* at 295. The *Davis* Court, however, held that the inmate reasonably relied on the statements of the prison officials when "he inquired with *multiple* jail staff about a potential second step, and each one either misinformed him or, at the very least, did not help." *Id.* at 296 n.2. For these reasons, the *Davis* Court reversed the district court's grant of summary judgment, finding the grievance procedures were practically unavailable. *Id.* at 296.

Defendants assert the same arguments as the *Davis* defendant, offering Rankin County Jail's official grievance procedure and a copy of the Inmate Grievance slide to show Johnson knew about the grievance procedure. But the portion of the Rankin County handbook Defendants submitted does not mention the grievance procedures or say Johnson received a copy of these procedures, and the Inmate Grievance slide says nothing about the requirement that an inmate file a *written request* for a grievance form. [58-3] at 6-7. Johnson testified in his *Spears* hearing that "the officer told me to holler at the lieutenant in the jail administration" and that he asked "Lieutenant Barnett, Lieutenant Spears . . . , Bryan Bailey, [and] Lieutenant King" for a grievance form. [81] at 30:1-11. These facts are enough to create a genuine issue as to whether Rankin County Jail

officials misrepresented the grievance process, or at a very minimum did not aid

Johnson in understanding this process.

There is also a genuine issue as to whether Rankin County Jail officials made

the grievance procedure unavailable by failing to provide Johnson a grievance form.

*See Aceves v. Swanson*, 75 F. App'x 295, 296 (5th Cir. 2003) ("If the institutional

authorities refuse to provide a prisoner with the forms needed to exhaust

administrative remedies, then those remedies are not "available" to the prisoner.").

Johnson testified he "wrote up a grievance form" and sent it to Lieutenant King and

Lieutenant Spears, but never received a response, and that he "always filed for a

grievance" after "every incident that happened to me dealing with me being

assaulted and then me being beaten real bad." *Id.* at 14:15-24; 31:12-17. These facts

are enough to create a genuine issue as to whether Rankin County Jail officials

made the grievance procedure unavailable in being "consistently unwilling" to give

Johnson a grievance form, especially when viewed in the light most favorable to

Johnson. The Court therefore overrules Defendants' Objections.

IV.    Conclusion

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Report and

Recommendation [82] of United States Magistrate Judge F. Keith Ball, entered in

this cause should be, and the same is, adopted as the finding of this Court. The

Court finds as follows:

- In Civil Action No. 3:20-CV-9-KHJ-FKB, the Court denies without prejudice
  [58] and finds [68] is moot;

- In Civil Action No. 3:20-CV-104-KHJ-RPM, the Court denies without prejudice [48];

- In Civil Action No. 3:20-CV-117-KHJ-LGI, the Court denies without prejudice [28] and finds [31] is moot;

- In Civil Action No. 3:20-CV-204-KHJ-FKB, the Court denies without prejudice [42] and finds [46] is moot;

- In Civil Action No. 3:20-CV-328-KHJ-FKB, the Court denies without prejudice [25] and finds [29] is moot;

- In Civil Action No. 3:20-CV-501-KHJ-LGI, the Court denies without prejudice [32].

SO ORDERED, this the 23rd day of August, 2021.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE